UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY OWENS,

      Plaintiff,

v.                                  CASE NO: 8:08-cv-264-T-23TBM

KRISTEN GERHARD JEBSEN
SKIPSREDERI A/S, et al.,

      Defendants.

_____/

## **ORDER**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the defendant

Kristen Gerhard Jebsen Skipsrederi A/S ("KGJS") moves (Doc. 5) to dismiss the action

for lack of personal jurisdiction.  The plaintiff, Timothy Owens, responds (Doc. 11) in

opposition.

## Motion to Dismiss

To establish personal jurisdiction over a nonresident defendant, a plaintiff must

satisfy both the state's long-arm statute and the constitutional due process requirement.

See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  If the applicable long-arm

statute, section 48.193, Florida Statutes, provides a basis for personal jurisdiction, due

process requires consideration of (1) the defendant's purposeful contact with the forum

state and (2) fair play and substantial justice.  Madara, 916 F.2d at 1514 (citing

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The plaintiff must first establish a prima facie case of personal jurisdiction.  If "the

defendant submits affidavits contrary to the allegations in the complaint, the burden

shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1360 (11th Cir. 2006).

The complaint alleges that the plaintiff, a Florida resident, owned the Querida Maria, a forty-five foot ketch.  KGJS, a Norwegian corporation with its principal place of business in Norway, owned and operated the Cozumel Cement, a bulk carrier registered under the Denmark flag.  (Doc. 1, ¶¶ 3-4)  On December 30, 2005, the Querida Maria was sailing through the Straits of Florida with a crew of two.  (Doc. 1, ¶ 12)  When one crew member fell overboard, the remaining crew member radioed for help and instituted a search, which proved unsuccessful.  (Doc. 1, ¶ 12)  After responding to the area, the captain of the Cozumel Cement advised the crew member that he would lift the Querida Maria onto the carrier's deck for transport.  (Doc. 1, ¶ 13)  However, after the crew member boarded the carrier, the Cozumel Cement decided to tow the Querida Maria, which was too heavy to lift.  (Doc. 1, ¶ 13)  The captain ignored the protests of the Querida Maria crew member.  (Doc. 1, ¶ 13)  During the voyage, the plaintiff radioed the captain, who informed him of the vessel's towing speed.  (Doc. 1, ¶ 14) Although the plaintiff cautioned that the Querida Maria could not be towed at such a high speed, the captain continued without slowing.  (Doc. 1, ¶ 14)  After many hours of towing and after the windlass and foredeck "gave away," the Querida Maria became exposed to seawater intrusion.  (Doc. 1, ¶ 15)  The Cozumel Cement left the Querida Maria adrift and eventually arrived in the Port of Tampa.  (Doc. 1, ¶ 9, 16)  The Querida Maria was never found.  (Doc. 1, ¶ 17)

The complaint alleges that KGJS's contacts with Florida subject the company to personal jurisdiction under section 48.193.  Alternatively, the plaintiff alleges that KGJS's contacts with the United States subject KGJS to general maritime jurisdiction. (Doc. 1, ¶ 9)

<u>General Personal Jurisdiction</u>

Under section 48.193(2), a defendant subjects itself to general jurisdiction in Florida by engaging in "substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise."  "Substantial and not isolated activity" means "continuous and systematic general business contact with Florida," <u>Woods v. Nova Cos. Belize Ltd.</u>, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (internal quotation marks omitted), not "[s]poradic activities or visits," <u>Price v. Point Marine, Inc.</u>, 610 So. 2d 1339, 1341 (Fla. 1st DCA 1992).

A chartered vessel's port calls, without more, will not subject the vessel's owner to general jurisdiction under section 48.193(2).  <u>Asarco, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784 (5th Cir. 1990); <u>Nicolaisen v. Toei Shipping Co.</u>, 722 F. Supp. 1162 (D.N.J. 1989); <u>Carib-USA Ship Lines Bahamas Ltd. v. Dorsett</u>, 935 So. 2d 1272 (Fla. 4th DCA 2006). The Fifth Circuit concluded that forty-seven calls at Louisiana ports (only twenty under the management of the defendant Ango-Eastern Management Services, Ltd., ("Anglo-Eastern")) were "better characterized as sporadic than continuous and systematic" contacts.  <u>Asarco</u>, 912 F.2d at 787.  The court noted that as a manager, Anglo-Eastern lacked control over the ports of call.  "Anglo-Eastern cannot be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of its

sporadic operational management of vessels sent to Louisiana by others."  <u>Asarco</u>, 912 F.2d at 787.

The plaintiff alleges (although largely a mere conclusion) that KGJS engages in "substantial and not isolated activity within this state" and engages "in solicitation or service activities within this state, either directly or through its authorized agents the Captains and Officers of the M/V Cozumel Cement."  (Doc. 1, ¶ 8)  The plaintiff further alleges (arguing in conclusory form) that KGJS "regularly and purposefully avail[s] [itself] of the privileges and protections of the State of Florida, entering into contracts in this State, and calling with their vessel at the ports of Tampa, Cape Canaveral, and Jacksonville, on a routine basis."  (Doc. 1, ¶ 8)

KGJS denies engaging in substantial activity in Florida.  John Solberg, assistant vice-president of KGJS, explains that the company manages vessels for Kristen Gerhard Jebsen Cement A/S ("KGJC"), the actual owner of the Cozumel Cement. (Doc. 5, Ex. A, ¶¶ 13-14)  Solberg states that neither KGJS nor KGJC has any office, employee, property, active bank account, mailing address, or telephone number in the United States.  (Doc. 5, Ex. A, ¶¶ 16-18, 28-29)  Solberg states that neither KGJS nor KGJC (1) has "directly been licensed or authorized to do business" in Florida, (2) has "directly solicited any business" in Florida, (3) has "directly sold or produced any products or goods" in Florida, or (4) has "directly earned any income" in Florida. (Doc. 5, Ex. A, ¶¶ 20, 22, 23)  Solberg fails to explain what he means by "directly."

Solberg explains that after negotiations in Norway, Mexico, and Denmark, Sunbulk Shipping, NV, ("Sunbulk") a Mexican corporation, contracted with KGJC to charter the Cozumel Cement for five years.  (Doc. 5, Ex. A, ¶¶ 12, 44)  The time charter

- 4 -

agreement provides that KGJS will insure the Cozumel Cement,[1] supply officers and a crew, and pay consular shipping and discharging fees of the crew and charges for port services pertaining to the crew.  (Doc. 5, Ex. B, ¶¶ 6, 8)  KGJS must change the crew if Sunbulk complains.  The agreement provides for arbitration in London under English law.  (Doc. 5, Ex. B, ¶ 45)  "The Vessel shall have the liberty to . . . tow and be towed, to assist vessels in distress, and to deviate for the purpose of saving life."  (Doc. 5, Ex. B, 22)

     With respect to the incident prompting this litigation, Solberg explains that the Cozumel Cement was traveling in the Caribbean Sea from Venezuela to Tampa when the Querida Maria's message arrived.  (Doc. 5, Ex. A, ¶ 3)  The Cozumel Cement searched for the missing crew member as part of a rescue effort coordinated by the "Rescue Center Curacao, Netherlands Antilles."  (Doc. 5, Ex. A, ¶¶ 4-5)  The Cozumel Cement towed the Querida Maria for about seventy-three hours through the Winward Passage between Cuba and Haiti until the Querida Maria broke loose in the Atlantic Ocean north of Cuba and south of the Bahamas.  (Doc. 5, Ex. A, ¶ 8)  During the voyage, the Cozumel Cement "was at all times under the control and direction of the vessel's time charterer" and "sailed only on orders from the vessel's time charterer." (Doc. 5, Ex. A, ¶¶ 45-46)  The Cozumel Cement "was scheduled to call at Tampa, Florida solely at the direction of the vessel's time charterer."  (Doc. 5, Ex. A, ¶ 47)

     The plaintiff responds that during the tow the captain and crew employed by KGJS deviated from Sunbulk's intended course; however, the plaintiff cites only the time

_____

     [1] The time charter agreement describes the vessel as "Dania Portland TBR," and the parties agree that the vessel's name was changed to the Cozumel Cement.

- 5 -

charter agreement as evidence.  The plaintiff also argues that KGJS's status as an "international shipping company" provides evidence supporting general personal jurisdiction.

The Cozumel Cement's routine call at three Florida ports while under the direction of Sunbulk are sporadic, not continuous and systematic.  Asarco, 912 F.2d at 787. KGJS's management of the Cozumel Cement during the tow is also an isolated, unanticipated incident that evidences less than continuous and systematic contact. Although KGJS fails to contradict the allegation that KGJS engages "in solicitation or service activities within this state . . . through its authorized agents the Captains and Officers of the M/V Cozumel Cement," the plaintiff fails to establish that any solicitation or service amounts to a continuous and systematic contact.  The plaintiff fails to establish general jurisdiction under section 48.193(2).

<u>Specific Jurisdiction</u>

Under section 48.193(1), a defendant subjects itself to specific jurisdiction in Florida for any cause of action relating to the commission in Florida of an enumerated act.  Subsection (f)(2) requires "causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at about the time of the injury . . . [t]he defendant was engaged in solicitation or service activities within this state."

The plaintiff alleges that KGJS injured a Florida resident by negligently towing the Querida Maria through the Florida Straits.  The plaintiff alleges that at the time of the injury, KGJS engaged "in solicitation or service activities within this state, either directly or through its authorized agents the Captains and Officers of the M/V Cozumel

Cement." (Doc. 1, ¶ 8)  As noted previously, Solberg responds that neither KGJS nor KGJC has "directly solicited any business" in Florida.  (Doc. 5, Ex. A, ¶¶ 20, 22, 23)  Solberg fails to deny any solicitation or service activity by the captains and officers of the Cozumel Cement.  Because KGJS fails to contradict the plaintiff's allegations, the analysis proceeds to constitutional due process.

A non-resident defendant submits to jurisdiction in the forum state only after establishing within the state minimum contacts, which "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum" and "reasonably anticipate[s] being haled into court there."  Posner v. Essex Ins. Co., 178 F.3d 1209, 1220 (11th Cir. 1999).  A plaintiff's "unilateral activity" with a nonresident defendant will not satisfy the minimum contacts requirement.  Hanson v. Denckla, 375 U.S. 235, 253 (1958).  "Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship–say, by solicitation–the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."  Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) (internal citation omitted).

The plaintiff claims that KGJS "regularly and purposefully avail[s] [itself] of the privileges and protections of the State of Florida, entering into contracts in this State, and calling with their vessel at the ports of Tampa, Cape Canaveral, and Jacksonville, on a routine basis."  (Doc. 1, ¶ 6)  In arguing that KGJS anticipated defending a lawsuit in the United States, the plaintiff points to the time charter agreement, created from a New York Produce Exchange Form and including a clause concerning the U.S. Anti-Drug Abuse Act of 1986.  (Doc. 5, Ex. B, ¶ 31(d))  The plaintiff argues that as "an

international shipping company" KGJS cannot avoid the jurisdiction of United States

courts.  KGJS characterizes as unforeseeable the prospect that towing the Querida

Maria creates personal jurisdiction in Florida.

KGJS's only contact with Florida relating to the claim is the towing through the

Caribbean Sea of a vessel owned by a Florida resident.  KGJS neither purposefully

availed itself of the privilege of conducting business in Florida nor reached into Florida

to initiate a relationship.  KGJS merely responded to an emergency.

<u>General Maritime Jurisdiction</u>

Finally, the plaintiff invokes general maritime jurisdiction.  Pursuant to Rule

4(k)(2), Federal Rules of Civil Procedure, "[f]or a claim that arises under federal law,

serving a summons or filing a waiver of service establishes personal jurisdiction over a

defendant if:  (A) the defendant is not subject to jurisdiction in any state's courts of

general jurisdiction; and (B) exercising jurisdiction is consistent with the United States

Constitution and laws."  To establish jurisdiction under Rule 4(k)(2), the plaintiff must

establish that the defendant is not subject to jurisdiction in any state.  <u>Mother Doe I ex</u>

<u>rel. R.M. v. Al Maktoum</u>, 2007 WL 2209258 at *9 (S.D. Fla. 2007).  "Jurisdiction

'consistent with the Constitution and laws of the United States' is that which comports

with due process."  <u>Consolidated Dev. Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1291 (11th

Cir. 2000)

The plaintiff argues that as "an international shipping company" KGJS maintains

"minimum contacts" with the United States.  However, the plaintiff fails to produce

evidence demonstrating that KGJS is subject to jurisdiction in no state.  However, even

if KGJS is not subject to jurisdiction in any state, the plaintiff fails to establish that

jurisdiction comports with due process under either specific or general personal jurisdiction.

### Jurisdictional Discovery

On the last page of its response to the motion to dismiss, the plaintiff requests jurisdictional discovery.  Local Rule 3.01(a) contemplates requesting relief in a motion rather than in response to another party's motion.  "Moreover, jurisdictional discovery is not freely granted, and a party seeking jurisdictional discovery should ordinarily specify the nature of evidence it seeks."  Estate of Miller ex rel. Miller v. Toyota Motor Corp., No. 6:07-cv-1358-Orl-19DAB, 2008 WL 516725 at *6, n.8 (M.D. Fla. Feb. 22, 2008) (citing Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n. 7 (11th Cir. 1999)).  The plaintiff fails to specify the evidence he sought.

### Conclusion

KGJS's motion (Doc. 5) to dismiss for lack of personal jurisdiction is **GRANTED**. The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on August 27, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE